UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. H-10-787-7 |
| GUILLERMO NONES | § | |

## PLEA AGREEMENT

The United States of America, by and through its United States Attorney for the Southern District of Texas, the defendant, Guillermo Nones, and the defendant's counsel have entered into the following plea agreement (the "Agreement") pursuant to Rules 11(c)(1)(A) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

### The Defendant's Agreement

1. The defendant agrees to plead guilty to Count One of the Superseding Indictment. Count One charges the defendant with knowingly conspiring to commit mail and wire fraud, in violation of Title 18, United States Code, Section 1349, by engaging in a scheme to defraud Houston Refining LP by paying kickbacks to its shipping manager in exchange for his approval of grossly inflated charges for the shipment of crude oil from Venezuela to Houston. The defendant further agrees to persist in his plea through sentencing. By entering this Agreement, the defendant waives any right to have the facts that the law makes essential to the punishment of

Count One either charged in the Superseding Indictment, proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2. The **statutory** penalty for the violation of Title 18, United States Code, Section 1349 in Count One is not more than twenty (20) years imprisonment and a fine of up to $250,000.00. Additionally, the defendant may receive a term of supervised release after imprisonment of up to three (3) years. Title 18 U.S.C. §§ 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then he may be imprisoned for the entire term of supervised release, not to exceed two (2) years, without credit for time already served on the term of supervised release prior to such violation. Title 18 U.S.C. §§ 3559(a)(4) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## The Sentence

3. The parties have agreed, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to a sentence of time served. The defendant understands that the Agreement will be binding upon the Court if and when the Court accepts the Agreement.

2

## Waiver of Appeal

4.     The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined **on any grounds set forth in 18 U.S.C. § 3742.** Additionally, the defendant is aware that 28 U.S.C. § 2255 affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his conviction or sentence by means of **any** post-conviction proceeding.

5.     In exchange for this Agreement with the United States, the defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed, in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates any provision of this Agreement, or (c) the defendant's plea is later withdrawn.

6.     The defendant understands and agrees that each and all of his waivers contained in this Agreement are made in exchange for the corresponding concessions and undertakings to which this Agreement binds the United States. If the defendant instructs his attorney to file a notice of appeal at the time the sentence is imposed, the United States will seek specific performance of this provision.

3

## Immigration Consequences

7. The defendant is not a citizen of the United States and understands that a plea of guilty may result in deportation, exclusion from admission to the United States, or the denial of naturalization.

## The United States' Agreements

8. The United States agrees to each of the following:

(a) The United States agrees to a sentence of time served as described in paragraph 3 of this Agreement; and

(b) If the defendant pleads guilty to Count One of the Superseding Indictment, satisfies the Restitution and Forfeiture obligations as described in paragraphs 17 and 18 of this Agreement, and persists in his plea through sentencing, and if the Court accepts this Agreement, the United States will at sentencing move to dismiss all remaining Counts of the Superseding Indictment against the defendant.

## United States' Rights

9. The United States reserves the right to carry out its responsibilities under the *Sentencing Guidelines*. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with the defendant's counsel and the Probation Office; and

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and 18 U.S.C. § 3553(a).

## Withdrawal of Plea

10. The United States and defendant agree that should the Court reject this Agreement at sentencing the defendant shall be permitted to withdraw his plea of guilty and proceed to trial on all counts of the Superseding Indictment.

## Rights at Trial

11. The defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. The defendant understands that by entering into this Agreement, he surrenders certain rights as provided herein. The defendant understands that the rights of a defendant include the following:

   (a)  If the defendant persisted in a plea of not guilty to the charges, the defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the Court all agree.

   (b)  At a trial, the United States would be required to present witnesses and other evidence against the defendant. The defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   (c)  At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

12. The defendant is pleading guilty because he *is* guilty of the charge contained in Count One of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the defendant's guilt:

(a) A subsidiary of LyondelBasell Industries, Houston Refining LP (Houston Refining), operates a major refinery in Houston. Most of the oil processed at that refinery is shipped from Venezuela. The cost of shipping that crude oil is a major expense. Pricing for crude freight has three components: (1) the amount of crude, typically fixed at 70,000 metric tons; (2) a fixed base rate published on a yearly basis by the World Scale Association that applies to a particular type of vessel and particular route; and (3) a multiplier that takes into account market fluctuations ("market multiplier"), which changes daily and is published by various reporting agencies such as the Association of Ship Brokers and Agents (ASBA). The total price to ship a particular crude freight cargo is calculated by multiplying these three components together. The market multiplier is the only component that fluctuates during the course of a year. Historically, Houston Refining entered into a significant number of shipping contracts that tied the market multiplier to the prevailing published market rates. For example, during 2006, Houston Refining's overall cost for shipping crude from Venezuela to its refinery closely tracked the published market rates.

(b) In late 2006, co-conspirator Jonathan Barnes became Marine Charter Manager for Houston Refining. As Marine Chartering Manager, Barnes was responsible for entering into contracts for the shipment of oil being imported from Venezuela. Houston Refining's accounting department had a procedure in place to verify that the invoices sent for shipping matched the contracted terms, but did not analyze whether the contract

6

itself was negotiated at market rates. During the fall of 2009, new management at Houston Refining noticed that the shipping costs seemed excessive. Subsequent analysis of the shipping during Barnes's tenure as Chartering Manager revealed that with respect to three particular entities that had not previously done business with Houston Refining, the pricing was tens of millions of dollars above published ASBA market rates.

c. Federal investigation revealed that these three entities were paying Barnes millions of dollars in kickbacks. Defendant **Guillermo Nones** was employed by one of the entities, a Panamanian company called Lake Huron Group. In approximately May 2009, **Nones** entered into an arrangement with Barnes in which Barnes would cause Houston Refining to do business with Lake Huron in exchange for Barnes receiving 70% of the profit and Lake Huron retaining the remaining 30%. **Nones** was Lake Huron's contact person with Barnes as **Nones's** own company had previously performed certain brokerage and agency services for Houston Refining in Venezuela prior to the kickback scheme involving Lake Huron. Barnes, **Nones** and others at Lake Huron never disclosed the kickback arrangement to Houston Refining. Instead, **Nones** would communicate with Barnes, Barnes would determine what inflated rate to charge Houston Refining for the shipment of crude and then **Nones** would cause others at Lake Huron to invoice Houston Refining at the grossly inflated rates. Houston Refining would then wire payments to Lake Huron under the false pretense that the rates were the result of arms-length negotiation when in fact Barnes had an incentive to pay higher rates because he was receiving 70% of any profit in the form of kickbacks. After Lake Huron received the inflated payments from Houston Refining, **Nones** would cause others at Lake Huron to wire kickback payments to Barnes at bank accounts Barnes maintained in Switzerland and in the United States. Included among those kickbacks was a July 20, 2009 wire transfer in the amount of $1,396,571.81 from a Lake Huron bank account at Northern Trust in Miami, Florida to a Barnes bank account at Wachovia in Houston, Texas. From May through November 2009, **Nones** and his co-conspirators caused Houston Refining to pay approximately $25 million above market rates for the shipment of crude oil.

7

## Breach of Plea Agreement

13. If the defendant fails in any way to fulfill completely all of his obligations under this Agreement, the United States will be released from its obligations hereunder, and the defendant's plea and sentence will stand. If at any time the defendant retains, conceals, or disposes of assets in violation of this Agreement, or if the defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may ask the Court to set aside his guilty plea and reinstate prosecution. Any information and documents that have been disclosed by the defendant, whether prior to or subsequent to execution of this Agreement, and all leads derived therefrom, will be used against the defendant in any prosecution.

## Mandatory Special Assessment

14. Pursuant to 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing the defendant will pay to the Clerk of the United States District Court a special assessment in the amount of $100.00. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Fine and Reimbursement**

15. The defendant understands that under the *Sentencing Guidelines* the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the United States for the costs of any imprisonment or term of supervised release, if any is ordered.

16. The defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he is requested to do so. In the event that the Court imposes a fine as part of the defendant's sentence, the defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his sentencing.

**Restitution**

17. Defendant agrees to make a restitution payment to "Clerk, U.S. District Court," for the benefit of the fraud victim, Houston Refining, in the amount of $250,000 before or at the time of sentencing. Defendant understands that the Court may impose an additional restitution obligation.

## Forfeiture

18. Defendant consents to any agreed order of forfeiture or judgment, and further agrees to take all steps necessary to pass clear title to forfeitable assets to the United States, including but not limited to surrendering of title, signing a consent decree, stipulating facts regarding the transfer of title and basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant agrees to imposition of a personal money judgment against him and in favor of the United States in the amount of $1 million. Defendant stipulates and admits that one or more of the conditions set forth in 21 U.S.C. § 853(p) ("Forfeiture of substitute property") exists. Defendant specifically agrees to the forfeiture of the real property located at 14438 Summerleaf Lane, Houston, Texas 77077, as substitute assets. Defendant will assist as requested in transferring insurable title to the United States. Defendant also understands that forfeiture and restitution are separate aspects of sentencing.

## Complete Agreement

19. This Agreement, consisting of 11 pages, together with the attached addendum signed by the defendant and his attorney, constitutes the complete plea agreement between the United States, the defendant, and his counsel. No promises or representations have been made by the United States except as set forth in writing in

this Agreement. The defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

20. Any modification of this Agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on ___August 1___, 2013.

_____
Guillermo Nones
Defendant

Subscribed and sworn to before me on ___August 1___, 2013.

DAVID J. BRADLEY
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By: _____     _____
Jason Varnado                            James Kennedy
Assistant U. S. Attorney                 Attorney for Defendant

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. H-10-787-7 |
| GUILLERMO NONES | § | |

## ADDENDUM TO PLEA AGREEMENT

I have fully explained to the defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the *United States Sentencing Commission Guidelines Manual*, and I have fully and carefully explained to the defendant the provisions thereof which may apply in this case. I have also explained to the defendant that the *Sentencing Guidelines* are only advisory and the Court may sentence the defendant up to the maximum allowed under the Agreement. Further, I have carefully reviewed every part of the Agreement with the defendant. To my knowledge, the defendant's decision to enter into the Agreement is an informed and voluntary one.

_____     _____7-31-13_____
Attorney                             Date

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the *United States Sentencing Commission Guidelines Manual* which may apply in my case. I have read and carefully reviewed every part of the Agreement with my attorney in both English and Spanish. I understand the Agreement, and I voluntarily agree to its terms.

| | |
|---|---|
| [signature] | 8/1/2013 |
| Defendant | Date |

2